EDWARD OWEN ET AL., APPELLEES, V. D. C. MAIN ET AL., APPELLANTS.

FILED NOVEMBER 1, 1912. No. 17,029.

1. **Statutes: CONSTRUCTION.** Where the language of a statute is clear and unambiguous, it must be interpreted in its ordinary sense, even though it lead to an injustice; but, if the language is doubtful or obscure, and it is susceptible of an interpretation which will cause a forfeiture or perpetrate an injustice, while another interpretation will avoid such a result, that which is in further ance of justice will prevail.

2. **Agricultural Societies: COUNTY AID: TITLE TO PROPERTY.** A statute authorized county boards in counties where county agricultural societies have purchased or shall purchase real estate for fair grounds to pay out of the county treasury the same amount of money for the purchase and improvement of such sites as paid by such agricultural societies or individuals, and provided, fur ther, that when such agricultural societies should "be dissolved or cease to exist in any county where payments have been made for real estate or improvements upon such real estate, for the

use of any agricultural society, then all such real estate and improvements shall vest in fee simple to the county making such payment." The latter provision is construed; and it is *held* that the words "all such real estate and improvements" refer only to the real estate purchased and improvements made by the money paid out of the county treasury.

3. ——: ——: DEFAULT: RECOVERY BY COUNTY. The amendment of section 14 made by the laws of 1879, p. 400, providing that a county board may pay to a county agricultural society owning a certain quantity of real estate for fair grounds a specified amount of money "to be expended by such society in fitting up such fair grounds, but for no other purpose," made no change with respect to the right of the county to recover back the amount of its contribution in case the society defaulted as specified in the statute.

4. ——: ——. The purpose of the legislature was to allow such a society formed to aid in the extension of agricultural education the use of the funds of the county to a limited extent, in trust, and to prevent the diversion of public funds to private use if the society fails to carry out the purpose of its organization.

APPEAL from the district court for Wayne county: GUY T. GRAVES, JUDGE. *Reversed with directions.*

*James Britton, William V. Allen* and *William L. Dowling,* for appellants.

*A. R. Davis* and *R. E. Evans, contra.*

LETTON, J.

In 1885 the Wayne County Agricultural Society was incorporated under the procedure provided for in the general incorporation laws of the state. Stock was issued and subscribed for by the incorporators. Prior to the holding of the first annual fair, which was held in September of that year, it purchased 25 acres of land, and fitted up the same for fair purposes by preparing a race track, and building fences, grand stands, and other structures necessary for the carrying on of the purposes of its organization. It realized from stock subscriptions the sum of $1,641, of which $922 was expended in the purchase of land for the fair grounds.

In September, 1885, the association applied to the board of county commissioners of Wayne county for an appropriation of money to aid the society in fitting up its grounds. A bill was presented for $300, which was allowed, and on January 4, 1886, a warrant upon the general fund for that amount was paid by the county. The evidence shows that by the middle of January, 1886, $1,806.25 had been paid for real estate and improvements thereon, apparently from the proceeds of the sale of stock and from the appropriations made by the county. The land had been bought and paid for before any money was received from the county. Premiums and other expenses were paid from other sources. For a number of years between 1885 and 1889 the society held fairs, and received aid from the county board under the provisions of section 12, ch. 2, Comp. St. 1881, upon filing the necessary certificate under the act. It held its last fair in September, 1901. On April 25, 1905, the society was dissolved by legal proceedings, and the defendants Main, Bressler, and French appointed trustees for the creditors and stockholders. This action was brought on behalf of the county against the trustees and certain persons claiming under them. Its purpose was, as the prayer shows, to procure a decree "that the aforesaid real estate acquired by said Wayne County Agricultural Society and used for its fair grounds and all improvements by it made thereon has vested in fee simple in said county of Wayne; that the defendants and each of them have no right or title or interest in said real estate; that the title of the said county of Wayne to the said real estate be quieted against the claims of the defendants; that the said plaintiffs be put in possession of said real estate; and for such other and further relief as may be just and equitable."

A number of defenses are pleaded: The statute of limitations; that the real estate is private property of the corporation and of the individual stockholders; that the provisions of the statute upon which the plaintiffs rely is violative of the provisions of the constitution of the state

of Nebraska and of the federal constitution and of the fifth and fourteenth amendments thereto; and a denial that any part of the money appropriated was expended in the purchase or improvement of the real estate. The reply practically amounts to a general denial of the new matter in the answer, coupled with a demurrer to the same.

The arguments have taken a wide range, but we think it unnecessary to consider them at length. The plaintiffs' theory, summarily stated, is that the society is a public or quasi-public corporation, formed to carry on a public enterprise, and authorized under the statute to receive aid from the county; that it, quoting from the brief, "acting under the statute, presented its application for public funds to improve the property already dedicated to the public, and, by virtue of such application and the payment by the county from the public funds of the sum applied for, the county is authorized and charged to hold the land in trust for the inhabitants of the county for county fair purposes. It has by the act of contribution been vested with the right and duty to become an actor in the preservation of the public land dedicated to the purposes prescribed by the articles of incorporation. By the incorporation and purchase of the land, there was a dedication to the public of Wayne county. By the application for and receipt of funds to improve or fit up the grounds, there was a contract that the county should assume the duty of keeping the land for the purpose to which it was dedicated." On the other hand, the defendants insist that the society is a private corporation carrying on a work for the benefit of the public, but having the right to own as its private property the real estate and other property necessary for its proper purposes which had been donated to it or was purchased by its private funds; that, as to such property, there was no dedication to the public, and that the provisions as to title vesting in the county on dissolution only apply to property for which payment has been made by the county.

Quite a little testimony was taken as to the payment of money by the county in successive years under the provisions of the statute allowing a sum equal to three cents for each inhabitant of the county to be paid to any agricultural society which has raised and paid in by voluntary subscription, or by fees imposed upon its members, in each year not less than $50; but, since the condition expressed in the statute with reference to the real estate and improvements vesting in fee simple in the county applies only "where payments shall have been made for real estate or improvements upon such real estate," we think none of this evidence has any direct bearing upon the question at issue, except as it tends to show the quasi-public character of the corporation.

The decision of this case depends solely upon the interpretation of a statute. In order to ascertain the meaning of the legislature, a survey of the evolution of the particular provisions involved is needful. The first act in Nebraska relating to county agricultural societies was passed by the territorial legislature in 1858. 1 Complete Session Laws, p. 530. After providing for the organization of county societies and a territorial board of agriculture, and specifying the respective duties of these organizations, section 8 declared: "That all county agricultural societies which may be organized under this act be and the same are hereby declared bodies corporate and politic, and as such shall be capable of suing and being sued, and capable of holding in fee simple such real estate as they may purchase or receive by donation, not to exceed eighty acres of land and the buildings thereon." Section 9 provides, in substance, that conveyances made to such societies shall vest a title in fee simple. Sections 10 and 11 are as follows:

"Section 10. In all cases when such county agricultural societies shall purchase real estate as sites whereon to hold fairs, the county commissioners of such counties may, if they think it for the interest of the counties and societies, pay out of the county treasuries of such counties

the same amount of money for the purchase and improvements of such sites as shall have been, or shall hereafter be, paid by said agricultural societies or individuals for such purpose.

"Section 11.   In all cases when agricultural societies shall be dissolved or cease to exist in any county where payments have been made for real estate or improvements upon such real estate, for the use of any agricultural society, then all such real estate and improvements shall vest in fee simple to the county making such payment."

Though the law was amended in other particulars, these provisions seem to have been carried forward with the language unaltered until 1879, when these sections were changed to read as follows (Laws 1879, p. 400, secs. 13, 14, 15):

"Section 13.   Each county society may purchase and hold in fee simple such real estate as they may deem necessary, not exceeding 160 acres of land, for the purpose of holding county fairs.

"Section 14.   Whenever any county agricultural society, organized by law, shall have procured in fee simple, free from incumbrance, land for fair grounds not less than ten acres in extent, the county board of said county may, in their discretion, if the finances of the county will admit, appropriate and pay to such society a sum not exceeding one hundred dollars for every thousand inhabitants in said county, to be expended by such society in fitting up such fair grounds, but for no other purpose; but not more than one thousand dollars shall in the aggregate be appropriated in any one county.

"Section 15.   Each society receiving such appropriation shall, through its secretary, make to the county board a detailed statement, with vouchers showing the legal disbursement of all the moneys received.   And in all cases, when such county agricultural societies shall be dissolved, or neglect, for the space of two years, to discharge the duties devolving upon them by law, or cease to exist, in any county where payments have been made for real

estate, or improvements upon such real estate, for the use of any agricultural society, then all such real estate and improvements shall vest in fee simple in the county making such payment, and the district court of said county, upon proof thereof, shall, upon petition of said county board, make a proper decree vesting the title to such property in said county."

No further amendment was made until 1905, but we think the changes then made were immaterial as affecting the questions here presented. Sections 8 to 11, inclusive, of the Nebraska act of 1858 are almost a verbatim copy of an act of the Ohio legislature, passed February 15, 1853. 1 Rev. St. (Ohio) S. & C., ch. 2, p. 66 *et seq.* Several other states have statutes of a similar nature conferring the power upon public authorities to appropriate money in aid of such societies. Some of these statutes make no provision for the return of the money or the reversion of the property for which it was expended if the society dissolves or fails to carry out the purpose of its organization; while others provide for the retention of an interest in the grant to the extent that it shall revert in case of such a failure. Among the latter class are the Ohio statute referred to; Laws Washington, 1909, ch. 62; Laws Maryland, 1904, ch. 141; Supp. to Code of Iowa, 1907, sec. 1660; Gen. St. Kansas, 1868, ch. 2. By the Kansas act the county commissioners, if the voters so authorize, may appropriate money to be expended under the direction of the county agricultural society in the purchase and improvement of fair grounds for the use of the society, and the statute provides that all such property shall be held in trust by the board of county commissioners for the use and benefit of the society.

The Iowa law permits the county authorities to appropriate and pay a sum in proportion to population to such societies, "to be expended by it in fitting up or purchasing such fair grounds, but for no other purpose," and, if authorized by a vote of the people, to purchase real estate for fair purposes. "The title of such real estate when

purchased to be taken in the name of the county," and placed under the control and management of an incorporated county society.

Coming now to a consideration of the Nebraska act: It will be seen that section 10 of the original act did not in terms authorize the county commissioners to pay any money to county agricultural societies, but it authorizes the board, "if they think it for the interest of the counties and societies," to "pay out of the county treasuries * * * the same amount of money for the purchase and improvements of such sites as shall have been, or shall hereafter be, paid by said agricultural societies or individuals for such purpose;" and that by section 11 it is provided that when such societies "shall be dissolved or cease to exist in any county where payments have been made for real estate or improvements upon such real estate, for the use of any agricultural society, then all such real estate and improvements shall vest in fee simple to the county making such payment." There is no direction to whom the money should be paid or as to how the title should be taken. It might be paid by the county to the landowner and the title taken to the society, or the title might be taken to the county, as trustee, "for the use of the society," as the statute says. The money might be paid through the society and the title taken in either way equally as well.

It is a principle of statutory interpretation that, where the language of a statute is clear and unambiguous, it must be interpreted in its ordinary sense, even though it lead to mischief and injustice; but it is also a principle that, if the language of a statute is doubtful or obscure, and it is susceptible of an unreasonable interpretation, or one which will lead to a forfeiture or to an injustice, while another interpretation will avoid such a result, that which leads to a reasonable and just result will prevail. Beal, Cardinal Rules of Legal Interpretation (2d ed.) p. 324; 2 Sutherland (Lewis) Statutory Construction (2d ed.) secs. 408, 490, 541.

It seems to the writer impossible to believe the legislature

intended that, where public spirited citizens had engaged in a voluntary enterprise for the public benefit and in aid of agriculture, the county might, by contributing perhaps a small amount in proportion to the whole amount invested, on the expiration of the corporate charter, or on the cessation of the undertaking for any other cause, not only reclaim the amount of its own contribution, but take by the strong hand that which had been invested by others. Such a construction should not be adopted, even if constitutional, unless no other reasonable meaning can be imputed to the statute.

The language of section 11 is that "such real estate and improvements" shall vest in the county. What real estate and improvements does this refer to? Plainly that for which payments had been made by the county for the use of the society. If the county has taken the title in its own name for the use of the society, when the society dissolves or ceases to exist the trust relation ends; and under the statute the title to the real estate and improvements vests in the county in fee simple, without further proceedings. The result would be the same if the county had purchased through the society and the title had been taken in the name of the society. The use of the property and its control would be in the society, which would hold the legal title in trust for the county, and upon the specified contingency of the society dissolving or ceasing to exist title to such property would vest in the county. The intent that runs through this class of statutes seems to be to preserve that property for the public the use of which it has given to the society, and in this way to prevent the diversion of public funds, either directly or indirectly, to private purposes.

These considerations apply to the statute as it stood before the amendment of 1879. The amendment to section 14, then made, changed the law in the respect that it provided that money might be appropriated and paid to the society only, and to no other person; not, as before, for the purchase of real estate or improvements, but for "fitting

Owen v. Main.

up such fair grounds, but for no other purpose." Section 15, however, was unaffected in so far as it provided that on the happening of the specified contingency, "where payments have been made for real estate or improvements * * * for the use of any agricultural society, then all such real estate and improvements shall vest in fee simple in the county making such payment." Of course, it was necessary to retain these provisions in order to preserve the right of recaption by counties having money invested in fair grounds. The new restrictions in section 14 cannot apply to any such counties.

It is argued that the rapid depreciation in value of improvements of a certain class, and the difficulty of separating other improvements, of the nature of trees, fences, roads, race-tracks, etc., from the real estate, in case of a necessity arising, should prevent such a construction of the statute. It is true that conditions may arise which render the statute difficult of application; but, if the evident purpose of the legislature to preserve for the public the money which had been converted into real estate or improvments is kept in mind, we believe the powers of a court of equity are sufficient to properly guard public interest. On the other hand, if the construction contended for by the county is adopted, it will be possible that a county, by making a contribution of a few dollars for improvements on valuable real estate belonging to an association of this class, on its failure to hold a fair through unavoidable circumstances, or upon the dissolution of its charter either by lapse of time or from other causes, may sequester such property without compensation. Such a consequence shocks the conscience.

To conclude, it seems to us that the intention of the legislature was to preserve the public funds, while at the same time aiding in the extension of agricultural education. We will not lightly impute to that body an intention to take something for nothing from the progressive citizen who, in common with the county, advanced funds for the general welfare.

The improvements made with the county money are not distinguishable and severable from those made by the society from its own funds. The defendants offered in open court to pay the sum advanced with legal interest. That the public should receive back its own if the enter-prise fails is just and right, and we think this is all that the county can justly claim.

The judgment of the district court is reversed and the cause remanded, with directions to enter judgment in behalf of plaintiff for $300, with interest from the date of payment at 7 per cent. per annum, and to deny the plaintiff's prayer for a decree quieting title to the real estate involved.

REVERSED.

ROSE, J., dissenting.

The Wayne County Agricultural Society was a creature of statute. It came into existence for a definite pur-pose. It was not a money-making corporation. It was above the aim of pecuniary individual enterprise. Its field of influence was in a farming community. Its object was the promotion of agriculture, stock-raising, horticulture, and the mechanical arts. Its principal duties were necessarily of a public nature, and it was properly the object of public solicitude. The legislature provided for its organization and maintenance. Its technical status is immaterial, since in any view it was in some aspect an agency of government. The county was authorized to appropriate public money for its benefit. Grounds and improvements for holding annual fairs were purchased by joint contributions of private individuals and the public. Some of the expenses of holding fairs were derived from the same source. There was no reason why public-spirited citizens who were interested in the im-provement of a farming community should not be allowed to make voluntary contributions for that purpose upon terms prescribed by statute. Every item so contributed was, under the statute, voluntary. In making them, each

contributor entered into a contract with the public to
participate in a public agency, and the statutes were by
construction parts of the agreements so made. The
statute was an open book. Every contributor knew the
terms prescribed by law and agreed to them. He knew
before generosity prompted him to join in the creation of
a public fund that the property purchased with it would
be held in trust for the county, after abandonment of its
use for the purposes of a fair. The statute said so, and
that provision remained in force during the entire exist-
ence of the society named. There is no question of
forfeiture or confiscation in the case. The Wayne County
Agricultural Society held fairs from 1885 until 1901.
Later it abandoned the purposes of its existence and was
dissolved. The trust property, consisting of the fair
grounds and improvements, became valuable. What shall
be done with it? That was the question to be considered.

It seems clear to my mind that the question is answered
in unequivocal terms by the statute, which is by construc-
tion embodied in all the contracts between the public and
those who voluntarily created the fund with which the real
estate in controversy was purchased and improved. "In
all cases, when such county agricultural societies shall be
dissolved, or neglect, for the space of two years, to dis-
charge the duties devolving upon them by law, or cease to
exist," says the statute, "in any county where payments
have been made for real estate, or improvements upon such
real estate, for the use of any agricultural society, then *all
such real estate and improvements shall vest in fee simple
in the county making such payment,* and the district court
of said county, upon proof thereof, shall, upon petition of
said county board, make a proper decree vesting the title
to such property in said county." In my opinion, this
language is too plain for construction. It means, as
applied to the facts of this case, that the "real estate and
improvements" constituting the fair grounds is in equity
the property of the county. If any ground for construc-
tion existed, however, the interpretation of the majority is

erroneous. The statute as a whole shows that the funds with which the fair grounds were purchased and improved were intended for a public purpose. The fund originally contributed by the county for improvements became, for the purposes of holding fairs, as much a part of the real estate as the land itself. When the society and those acting for it appealed to the county for aid, they proclaimed the public character of the undertaking. When the county contributed funds, it asserted the same fact. When the funds were received from the county, they were accepted as public funds. They could not be lawfully collected from taxpayers for a private purpose. The real estate being in fact public property held in trust for the county, it should be decreed to be the county's property upon the extinguishment of the trust by abandonment. The statute, as I read it, says so; but, conceding the language quoted to be ambiguous, all the legislation on the subject indicates an abiding purpose on the part of the lawmakers to keep public property used for agricultural purposes under the control of a public agency, and to transfer the title to the public after the original use terminates. The legislature so understood its own enactments, and that intention is shown by the amendment of 1905. Laws 1905, ch. 2.

A manifest purpose of the statute is the perpetuation of agricultural societies. The act should be construed with this end in view. Increase in the value of land used for fairs was inevitable. If the title is held in trust for the incorporators or stockholders of agricultural societies, there will be a temptation to abandon the fairs, sell the fair grounds, and distribute the profits among themselves. This would defeat the evident purposes of legislation. To prevent such a result and to continue the public agency established to promote the interests of agriculture, the legislature wisely made provision for decreeing the land to be the property of the county. It is apparent, therefore, that the construction of the majority defeats the legislative will.

Even if the construction of the majority were correct, however, no sufficient reason can be given for allowing the county to recover the amount contributed by it, with interest, while the shareholders are allowed to distribute among themselves the profits on their contributions. In a suit in equity involving property rights, the same rules should be applied to all the parties, though one of them is a county. I do not approve the doctrine which gives the public what it contributed to a common fund, with statutory interest, and distributes the remainder with accruing profits, to individual contributors.